UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MICHAEL ROBINSON, | ) | 3:14CV0201 |
| | ) | |
| Petitioner | ) | JUDGE PATRICIA GAUGHAN |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| ED SHELDON, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | RECOMMENDATION |

McHARGH, MAG. J.

The petitioner John Michael Robinson ("Robinson") has filed a petition for a
writ of habeas corpus through counsel, arising out of his 2001 convictions, based on
a negotiated guilty plea, for two counts of aggravated murder, one count of
attempted aggravated murder, and other charges, in the Sandusky County (Ohio)
Court of Common Pleas.

In his petition, Robinson raises a single ground for relief:  "Conviction
obtained by a plea of guilty which was unlawfully induced due to it needlessly
encouraged the defendant to enter a plea of guilty in order to escape the risk of
death."  (Doc. 1, § 12.)

The respondent has filed a Return of Writ, arguing that his petition is
untimely, or the claim was procedurally defaulted.  (Doc. 13, at 6, 12-13.)  Robinson
has filed an Traverse (doc. 20), and the respondent filed a reply (doc. 21).

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Robinson entered a negotiated plea of guilty to two counts of aggravated murder, with firearm specifications, and one count of attempted aggravated murder, with a specification, and was subsequently sentenced to three years plus incarceration for life without the possibility of parole for each count of aggravated murder, and three years plus ten years for the count of attempted aggravated murder, to be served consecutively.  (Doc. 13, RX 3, RX 1, and RX 18, at 1-2.)

Robinson did not file a direct appeal.  Almost nine years later, on Feb. 19, 2010, Robinson wrote a letter to the trial court, requesting a new trial "on the grounds that [he] was pushed into taking that plea deal."  (Doc. 13, RX 4.)  Robinson wrote that he "would be willing to take responsibility for [his] actions if found guilty."  *Id.*  Robinson also stated that he "was very young in mind when this case took place."  *Id.*

On June 11, 2010, Robinson pro se filed a Petition to Vacate or Set Aside Sentence, pursuant to Ohio Rev. Code § 2953.21.  (Doc. 13, RX 5.)  In his petition, Robinson stated two claims:

1.  New evidence that could not be brought [forth] at trial and would drastically change the outcome of trial.

2.  Conviction obtained by plea of guilty which was unlawfully induced due to it needlessly encouraged the defendant to plea[d] guilty in order to escape risk of death.

2

(Doc. 13, RX 5, at 2-3.)  The facts supporting both claims were stated as "Assailant is now known in the 2 murders."  (Doc. 13, RX 5, at 2.)

Robinson's motion, and the state's opposition, refer to an "affidavit" in support[1].  The state quotes a statement[2] of Donald A. Brown, to wit, "On two occasions I went to commit a robbery and in each occasion a person ended up being killed."  (Doc. 13, RX 6, at 2.)

The state provided an affidavit from an investigating officer of the Ottawa County Sheriff's office, which stated that Robinson was in possession of a pistol and bullets at the time of his arrest in Texas, and that ballistic analysis indicated that bullets found at each crime scene were fired from the gun  found in his possession.  In addition, DNA samples from a cigarette and beer bottle at one crime scene matched a DNA standard taken from Robinson.  (Doc. 13, RX 7, Levorchick aff., at 1-2.)

---

[1]  Although the "affidavit" which supported Robinson's petition is not in the record before this court, it appears to be identical to an undated statement by Brown which is included with his motion for a new trial.  (Doc. 13, RX 10, at [6].)

[2]  The parties loosely refer to Brown's statement as "affidavits."  An affidavit is a statement reduced to writing and sworn to or affirmed before some officer who has authority to administer an oath or affirmation.  *In re Central Stamping & Mfg. Co.*, 77 F.Supp. 331, 332 (E.D. Michigan 1948).  Federal statute also allows for "unsworn declarations under penalty of perjury" to support any matter that legally requires an affidavit to support it.  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (citing 28 U.S.C. § 1746).  Brown's first, undated statement was not sworn, nor was it made under penalty of perjury, thus it cannot properly be considered as an affidavit.  There does, however, appear to be some type of notary stamp embossed on it.  Brown's later, March 30, 2012, statement was not sworn, nor was it made under penalty of perjury.  The second statement contains the signature of a purported notary, but no seal.

The Sheriff's officer also averred that, at his sentencing hearing[3], Robinson stated, "I realize what I've done is absolutely horrifying. I can't begin to imagine what it would be like to lose a loved one. I want you to know that I am truly sorry." (Doc. 13, RX 7, Levorchick aff., at 2.) Both the Sheriff's officer and a correctional officer who were transporting Robinson to LCI averred that he admitted his guilt to them. (Doc. 13, RX 7, Levorchick aff., and Zelms aff.)

The trial court denied the petition on August 25, 2010, granting the state's motion for summary judgment. The court gave no credence to Brown's statement, dismissing it as vague, while crediting the averments by the two Sheriff's officers that Robinson had confessed involvement in the crimes in their presence. The court also noted that Robinson had been represented by competent counsel, that investigators were appointed by the court, and that one year passed between the crime and the change of plea. The court also noted that Robinson had signed a stipulation of facts, a written plea of guilty containing admissions, and the negotiated plea agreement, on May 30, 2001. (Doc. 13, RX 9.)

On July 19, 2010, while his post-conviction petition was pending, Robinson filed a motion pro se for a new trial. In that motion, Robinson argued that "newly discovered evidence that could not be brought forth at trial" supported his argument

[3] Although the trial court proceedings were recorded, the court reporter has averred that she is unable to transcribe the recordings due to the poor quality. (Doc. 13, at 3; RX 21.) The state attaches a newspaper article containing Robinson's alleged words of apology to the victims' families.

for a new trial.  Robinson asserted that he now knew the person responsible [Brown] for the two murders in this case.  (Doc. 13, RX 10.)

The motion included an undated statement from Brown, which reads, in part: "On two occasions I went to commit a robbery and in each occasion a person ended up being killed."  This statement does not specifically assert that Brown killed the victims, and does not discuss Brown's buying a gun from Robinson.  Brown did state, however, that he was willing to make a fuller statement.  (Doc. 13, RX 10, at [6].)

On Aug. 12, 2010, while his post-conviction petition and motion for new trial were pending, Robinson filed a motion pro se to withdraw guilty plea.  He asserts that he made a plea deal "out of an act of desperation in order to escape the risk of death."  He refers the court to Brown's statement, and claims that Brown's statement proves Robinson is not guilty of the two aggravated murder charges. (Doc. 13, RX 11.)

Robinson filed a motion for an evidentiary hearing for his motions for a new trial and to withdraw guilty plea, on Feb. 28, 2011, and a second motion for an evidentiary hearing on Feb. 9, 2012.  (Doc. 13, RX 12-13.)

The trial court ruled on Robinson's pending motions on Feb. 17, 2012, as follows:

> On February 9, 2012, Defendant filed his pro se motion requesting an evidentiary hearing pending the possibility of filing a motion for a new trial. This motion is duplicative of motions filed 2/25/10, 6/11/10, 7/19/10, and 8/12/10.  This motion being in the nature of a motion

5

seeking post conviction relief, and the court having previously
addressed the issue, said motion is denied.

(Doc. 13, RX 14.)

On July 20, 2012, Robinson filed a motion to modify his sentence, arguing
that it exceeded the statutory maximum, and was based only on judicial factfinding.
(Doc. 13, RX 15.)  The court denied the motion on July 25, pointing out that
Robinson's sentence did not exceed the statutory maximum, and was the result of a
negotiated plea.  (Doc. 13, RX 16.)

While the above motion was pending, Robinson filed a motion pro se for leave
to file a delayed appeal on July 23, 2012.  Robinson stated that he was not
represented by counsel, and was unaware of the proper time limits.  He also
claimed:  "Newly discovered evidence, person responsible has come forward."  (Doc.
13, RX 17.)

The court of appeals denied Robinson's motion for leave on Sept. 21, 2012.
The court noted that Robinson was advised of his limited right to appeal at the time
of his May 31, 2001, sentencing.  The court found that "defendant has not set forth
sufficient reasons for his more than 11-year delay in filing a notice of appeal."  (Doc.
13, RX 18, at 3.)

On Oct. 29, 2012, Robinson filed a notice of appeal, and a memorandum in
support of jurisdiction, with the Supreme Court of Ohio.  In his memorandum,
Robinson asserted he could prove he is not guilty in the two murders, because the
person responsible is willing to come forward and tell the truth.  He claimed his

6

conviction "was obtained by a plea of guilty which was unlawfully induced due to it needlessly encouraged the defendant to enter a plea of guilty in order to escape the risk of death."  (Doc. 13, RX 19, memorandum in support, at 1-2.)

According to Robinson, he sold his gun to Brown ["Donny"] on April 20, 2000, then several days later decided to buy it back, which he did in the late evening on April 24th.  (Doc. 13, RX 19, at [77]-[81].)  He admits shooting the surviving victim (Hovis) during the robbery in Fremont that evening, but claims he could not have committed the two murders which took place on April 21 and earlier on April 24, because the gun was not in his possession during that time period.  (Doc. 13, RX 19, at [79].)

Attached to Robinson's memorandum was also a lengthy statement from Brown, reciting that he had bought the gun from Robinson on April 20, committed one murder in the course of a robbery the next day, and then committed the second murder in the course of a robbery while on his way to sell the gun back to Robinson. (Doc. 13, RX 19, at [85]-[86].)  Brown claims that he did not come forward earlier because he had not realized that anyone had been charged with the crimes until he encountered Robinson in prison in 2010.  (Doc. 13, RX 19, at [87].)

On Feb. 20, 2013, the state high court declined to accept jurisdiction of the appeal.  (Doc. 13, RX 20; *State v. Robinson*, 134 Ohio St.3d 1467, 983 N.E.2d 368 (2013).)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2002).  *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  *Williams*, 529 U.S. at 405.  *See also Price v. Vincent*, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.


### III.  STATUTE OF LIMITATIONS

The respondent argues that Robinson's petition is time-barred, and should be dismissed.  (Doc. 13, at 6-8.)  The respondent calculates that the statute of limitations expired on June 30, 2002, and thus Robinson's petition filed January 30, 2014, is untimely.  (Doc. 13, at 6-7.)

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final."  *Carey v. Saffold*, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)).  The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Thus, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari.  *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003); *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002); *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied*, 534 U.S. 924 (2001) (citing cases).  A habeas petitioner filing for

collateral relief does not benefit from the 90 day certiorari period.  *Lawrence v. Florida*, 549 U.S. 327 (2007) (interpreting 28 U.S.C. § 2244(d)(2)).

Robinson does not dispute that his petition is outside the limitations period, but contends that, "where a Petitioner has made a claim of actual innocence, that claim is a 'gateway' to a complete adjudication of the merits of the petition."  (Doc. 20, at 2, citing *Schlup v. Delo*.)  Robinson asserts that "the 'gateway' created by actual innocence applies equally to those who have pled guilty to charges as well as those who have gone to Trial and been found guilty."  (Doc. 20, at 2, citing *Bousley v. United States*, 523 U.S. 614 (1998).)

A petitioner's claim of actual innocence in a non-capital case does not entitle him to habeas relief absent an independent constitutional violation in the criminal proceeding.  *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Cress v. Palmer*, 484 F.3d 844, 854-855 (6th Cir. 2007); *Appleman v. Turner*,  52 F.3d 324, 1995 WL 218463, at *1 (6th Cir. 1995) (TABLE, text in WESTLAW) (citing *Herrera*).  In *Schlup v. Delo*, the Supreme Court explained the difference between a procedural innocence claim, which can permit a petitioner to transcend procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive innocence claim.  *Schlup v. Delo*, 513 U.S. 298, 313-317 (1995).  The Supreme Court has held that actual innocence, if shown, can serve as a gateway through which a petitioner may pass whether the impediment is a procedural bar, or expiration of the statute of limitations.  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).

A. Equitable Tolling

The Supreme Court has held that the habeas statute of limitations may be subject to equitable tolling in appropriate cases.  *Holland v. Florida*, 560 U.S. 631 (2010).  However, Robinson bears the burden of persuading the court that he is entitled to equitable tolling.  *Connolly v. Howes*, No. 04-2075, 2008 WL 5378012, at *4 (6th Cir. Dec. 23, 2008); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002); *Day v. Konteh*, No. 1:08CV0212, 2009 WL 3321388, at *10 (N.D. Ohio Oct. 13, 2009).  As Robinson points out, a petitioner may claim actual innocence for purposes of equitable tolling, even if his conviction was the result of a plea.  *Connolly*, 2008 WL 5378012, at *4 (citing *Bousley*[4], 523 U.S. at 623).

To benefit from equitable tolling, the petitioner must show that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way.  *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Lawrence*, 549 U.S. at 335.  The Sixth Circuit has recently recognized that, "under the test articulated by the Supreme Court in *Holland*, a habeas petitioner must demonstrate both that he has been diligent in pursuing his rights and that an extraordinary circumstance caused his untimely filing."  *Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 750 (6th Cir. 2011), *cert. denied*, 133 S.Ct. 187 (2012).

---

[4] In *Bousley*, the Supreme Court stated that the petitioner's guilty plea would be constitutionally invalid if he had been misinformed of the elements of the offense.

11

The Sixth Circuit concluded that "*Holland*'s two-part test has replaced *Dunlap*'s five-factor inquiry[5] as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling."  *Hall*, 662 F.3d at 750; *see also Patterson v. Lafler*, No. 10-1379, 2012 WL 48186, at *2 (6th Cir. Jan. 9, 2012) (*Holland* is relevant test).  Sixth Circuit case law has consistently held that the circumstances which will lead to equitable tolling are rare.  *Hall*, 662 F.3d at 749 (equitable tolling granted "sparingly"); *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 1985) (quoting *Schlup*, 513 U.S. at 321); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840 (2000) (rare and exceptional).

Robinson does not demonstrate that any extraordinary circumstance prevented him from filing his petition within the one year limitations period; rather, he relies on his "actual innocence" argument.  ([Doc. 20](Doc. 20).)

### B.  "Actual Innocence" Gateway

The Sixth Circuit has allowed for equitable tolling based on actual innocence under certain limited and extraordinary circumstances.  *McSwain v. Davis*, No. 06-1920, 2008 WL 2744640 (6th Cir. July 15, 2008), *cert. denied*, 557 U.S. 919 (2009); *Souter*, 395 F.3d at 597-599; *see also McQuiggin*, 133 S. Ct. at 1928 (tenable actual innocence claims rare).  In *Souter*, the petitioner was able to point to new evidence,

---

[5]  *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001).

unavailable at the time of his trial, supporting a credible claim of actual innocence. *See, e.g.*, *Souter*, 395 F.3d at 583-584.  The threshold inquiry was whether the new facts raised sufficient doubt about the petitioner's guilt to undermine confidence in his conviction.  *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 317).  *Souter* stated:

> To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." [*Schlup*, 513 U.S. at 327].  The [Supreme] Court has noted that "actual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324, 115 S.Ct. 851.  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' "  *Id.* at 321, 115 S.Ct. 851.

*Souter*, 395 F.3d at 590; *see also McQuiggin*, 133 S. Ct. at 1928; *Maag v. Konteh*, No. 3:05CV1574, 2006 WL 2457820, at *1 (N.D. Ohio Aug. 23, 2006).

It is Robinson's burden to show that this is "one of those extraordinary cases where a credible claim of actual innocence has been established by new evidence." *McSwain*, 2008 WL 2744640.  To support his claim of equitable tolling, Robinson must present "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324; *Souter*, 395 F.3d at 590.  These examples were not meant to be an exhaustive list.  *Souter*, 395 F.3d at 593 n.8.

13

The Supreme Court has emphasized that "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citing *Schlup*, 513 U.S. at 327); *see also McQuiggin*, 133 S. Ct. at 1928; *Connolly*, 208 WL 5378012, at *4.  To demonstrate the actual innocence that would allow a court to consider a time-barred constitutional claim, a habeas petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Connolly*, 208 WL 5378012, at *4 (quoting *Schlup*, 513 U.S. at 316).

A court presented with new evidence must consider it in light of " 'all the evidence,' old and new, incriminating and exculpatory,' without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Connolly*, 208 WL 5378012, at *4 (quoting *House*, 547 U.S. at 538).

Because Robinson is claiming actual innocence after having entered a guilty plea, the court considers "any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy[.]" *Connolly*, 2008 WL 5378012, at *5 (quoting *Bousley*, 523 U.S. at 624).   The court looks not just at the facts to which Robinson admitted when he pled, but also at "any other evidence of his guilt that the Government has marshaled." *Connolly*, 2008 WL 5378012, at *5 (quoting *Waucaush v. United States*, 380 F.3d 251, 255 (6th Cir. 2004)).

14

In addition, because *Schlup* explicitly states that the new evidence must be "reliable," "the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record." *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004), *cert. denied*, 546 U.S. 961 (2005).  Therefore, this court must make its own credibility assessment to ascertain whether the new evidence proffered by Robinson is sufficiently reliable to warrant applying equitable tolling under the *Schlup* actual innocence standard.  *Souter*, 395 F.3d at 593 n.8; *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir.), *cert. denied*, 534 U.S. 963 (2001).

The Supreme Court has clarified that "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup,* 513 U.S. at 332).  A petitioner's delay is relevant to the appraisal of an actual innocence claim.  *Id.*  A federal habeas court, when assessing such a claim, "should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown."  *McQuiggin*, 133 S. Ct. at 1928.  This court has found, for example, that the passage of time weighed against an affidavit's reliability, where the affidavit was made "at least seven years" after the murder in question occurred.  *Gordon v. Turner*, No. 5:13CV251, 2015 WL 3969689, at *9 (N.D. Ohio June 30, 2015) (citing *McQuiggin*, 133 S.Ct. at 1935).

15

After viewing all of the evidence, in order to grant the petitioner's gateway based on a claim of actual innocence the court must be persuaded that "in light of the new evidence, no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup,* 513 U.S. at 329); *Connolly*, 2008 WL 5378012, at *4 (quoting *Schlup*, 513 U.S. at 327).

Robinson argues that Brown's statement "clearly establishes that he is the one who actually committed the criminal offenses the Petitioner was wrongfully convicted of and that Petitioner is actually innocent of." (Doc. 20, at 2.)  Robinson believes that, his "actual innocence being fully established," the court should proceed to consider the merits of his habeas claim (which is, that his "plea of guilty which was unlawfully induced"). (Doc. 20, at 3; doc. 1, § 12.)

The respondent contends that the "undated statement from a convicted felon filed 10 years after the crime does not bear the indicia of trustworthiness or reliability." The respondent notes that the first Brown statement, attached to the motion for a new trial, "was non-specific as to actual details of the crimes and it does not appear to have been properly notarized." Robinson did not file a more detailed statement until two years later. (Doc. 21, at 3.)

The crimes in question were committed on April 21 and 24, 2000. Robinson was indicted for the crimes shortly thereafter, on April 28, 2000. (Doc. 13, RX 2.) As noted by the state court,

16

> The Defendant was represented by [two] competent and capital qualified attorneys . . .  Investigators were asked for and appointed at the Defendant's request.  Numerous motions were filed with the Court.  A year passed between the commission of the crime and the change of plea from the Defendant.

(Doc. 13, RX 9, at 2.)  Robinson entered a negotiated plea of guilty a year later, on May 30, 2001.  (Doc. 13, RX 3.)  In pleading guilty, Robinson confessed to causing the death of Crystal Pierson on April 21, 2000, and the death of Denise Clink, on April 24, 2000.  (Doc. 13, RX 3, at 3.)  He also admitted the attempted murder of Robert Hovis, on April 24, 2000, all three crimes committed during the course of separate robberies.  (Doc. 13, RX 4, at 4.)

There is contemporaneous evidence tending to support Robinson's guilt, beyond the admissions in his guilty pleas.  At his sentencing, Robinson apparently made a statement of regret for the deaths he caused.  Although the transcript is unavailable, an officer's affidavit to that effect is additionally supported by quotes in a newspaper article[6].  (Doc. 13, RX 7, Levorchick aff., at 2.)  In addition, two officers have averred that he admitted his guilt to them.  (Doc. 13, RX 7, Levorchick aff., and Zelms aff.)

Robinson did not file a direct appeal.  Instead, almost nine years later, Robinson wrote a letter to the trial court on Feb. 19, 2010, requesting a new trial "on the grounds that [he] was pushed into taking that plea deal."  (Doc. 13, RX 4.)

---

[6]  The court considers all the evidence, without regard to whether it would necessarily be admitted at trial.  *Connolly*, 208 WL 5378012, at *4-*5 (quoting *House*, 547 U.S. at 538).

17

He wrote that he "would be willing to take responsibility for [his] actions if found guilty," and also stated that he was "very young" when the crimes took place.  Id.  In his February 2010 note to the court, there is no mention of his innocence, or the allegation that the gun was not in his possession when the two murders occurred.

It was not until four months later, in June 2010, that Robinson first claimed that the true killer was "now known."  (Doc. 13, RX 5, at 2.)  As discussed earlier, Brown's first statement, claiming his involvement in the crimes, was vague.

Two years later, in October  2012, when Robinson filed his memorandum in support of jurisdiction with the state high court, he asserted he could prove he was not guilty in the two murders, because Brown was willing to come forward.   (Doc. 13, RX 19, memorandum in support, at 1-2.)

According to Robinson, he sold his gun to Brown on April 20, 2000, then several days later decided to buy it back, which he did in the late evening on April 24th.  (Doc. 13, RX 19, at [77]-[81].)  He admits shooting the surviving victim (Hovis) during the robbery in Fremont that evening, but claims he could not have committed the two murders which took place on April 21 and earlier on April 24, because the gun was not in his possession during that time period.  (Doc. 13, RX 19, at [79].)

The court notes that this story is not necessarily "new evidence," that is, based on facts which were unavailable at the time of Robinson's indictment and subsequent plea.  The court points out Robinson's awareness that he purportedly did not have the weapon in his possession, and his representation by competent

18

counsel as well as appointed investigators.  (Robinson does not allege ineffective assistance of counsel.)  In light of Robinson's knowledge at the time of his indictment, the court must consider the inexplicable and unjustifiable delay on Robinson's part as a factor in determining whether actual innocence has been reliably shown.  *McQuiggin*, 133 S. Ct. at 1928.

For example, assuming Robinson supposedly sold his gun to Brown, Robinson would have known at the time of his arrest in April 2000 that he (Robinson) did not possess the murder weapon when the murders occurred, at least on the date when the first murder was committed.  The state had ballistic evidence that bullets found at each crime scene were fired from the gun found in Robinson's possession when he was arrested in Texas.  (Doc. 13, RX 7, Levorchick aff., at 1-2.)  At whatever point Robinson learned of the ballistic evidence, he always would have known (according to his story) that he did not have that gun on April 21, if he claims to have sold it to Brown on April 20.  Robinson had counsel and, in addition, the state court noted that investigators had been appointed by the court.  (Doc. 13, RX 9, at 2.)

Whatever Robinson knew, or did not know, of Brown's activities, Robinson knew that he had sold the gun to Brown, according to his story, and that Robinson could not, according to his story, have used the gun to commit the first murder on April 21, at the least.  Regardless of whether the "true killer" was willing to come forward at any time, Robinson according to his story was aware that the gun was not in his possession during the crucial time period.  Yet, there is no indication in the record, and Robinson points to no evidence, earlier than June 2010, that

19

Robinson argued for his innocence based on his lack of possession of the murder weapon, or that he suggested to the police or anyone else that perhaps Brown might be considered as a suspect in the two killings.  The unexplained delay in presenting this purported new evidence is a factor in the court's determination whether Robinson  has made the requisite showing.  *McQuiggin*, 133 S. Ct. at 1935.

Robinson's letter to the trial court on Feb. 19, 2010, simply requested "a new trial on the grounds that [he] was pushed into taking that plea deal."  (Doc. 13, RX 4.)  There is no mention of his current allegation that he could not have committed the crimes because he had sold the gun and the murder weapon was not in his possession when the two murders occurred.  Rather, he wrote that he "would be willing to take responsibility for [his] actions if found guilty."  Id.

Attached to Robinson's memorandum in support of jurisdiction was also a lengthy statement from Brown, reciting that he had bought the gun from Robinson on April 20, committed one murder in the course of a robbery the next day, and then committed the second murder in the course of a robbery while on his way to sell the gun back to Robinson.  (Doc. 13, RX 19, at [85]-[86].)

The court has already mentioned the deficiencies of Brown's statements.  *But see, generally Connolly*, 208 WL 5378012, at *4-*5 (quoting *House*, 547 U.S. at 538) (court considers all evidence, without regard to whether it would be admitted at trial).  Brown's first, undated statement was not sworn, nor was it made under penalty of perjury.  Brown's later, March 30, 2012, statement was not sworn, nor was it made under penalty of perjury.  The second statement contains the signature

20

of a purported notary, but no seal.  While, in this context, the statements' deficiencies do not rule out their consideration by the court, they do impact their reliability.

Although Brown's statements are "new" evidence, in the sense that the written statements themselves did not exist at the time of Robinson's plea, much of the underlying information would have been known to Robinson at that time. Again, the unexplained delay in presenting this purported new evidence is a factor in the court's determination.  *McQuiggin*, 133 S. Ct. at 1935.

Given the facts that:  (1) Robinson signed a negotiated plea of guilty (doc. 13, RX 3), waiving his rights and admitting he committed the crimes in question; (2) Robinson admitted his guilt in open court, as well as to the two officers; (3) Robinson apologized for the crimes in open court (despite the existence of a negotiated plea and sentence); (4) DNA evidence implicated Robinson; (5) ballistic evidence linked the murder weapon to the crimes, and that weapon was found in Robinson's possession when he was arrested in Texas shortly after the crimes; and (6) Robinson claimed he sold the gun to Brown (who supposedly returned the murder weapon to Robinson after shooting two people, without apparently invoking any suspicion or resentment by Robinson after his arrest with the possession of same), yet waited nine years to raise that exculpatory story; the court is not persuaded, in light of all the evidence, that no reasonable juror would have voted to find Robinson guilty beyond a reasonable doubt.

21

The court finds Robinson has failed to demonstrate a credible claim of actual innocence established by new reliable evidence that was not available at the time of his indictment and plea.  *See Schlup*, 513 U.S. at 324.  The petition is not saved by equitable tolling, and should be denied as untimely filed.

## IV.  GUILTY PLEA

Even if the court were to allow equitable tolling to excuse Robinson's untimely petition, a petitioner's claim of actual innocence in a non-capital case does not entitle him to habeas relief absent an independent constitutional violation in the criminal proceeding.[7]  *Herrera*, 506 U.S. at 400; *Sitto v. Lafler*, No. 06-2203, 2008 WL 2224862, at *1 (6th Cir. May 28, 2008); *Cress*, 484 F.3d at 854-855; *Bozsik v. Bradshaw*, No. 1:03CV1625, 2011 WL 4631908, at *4 (N.D. Ohio Mar. 18, 2011).  Robinson has not established a federal constitutional violation.

Robinson's sole ground for habeas relief is:  "Conviction obtained by a plea of guilty which was unlawfully induced due to it needlessly encouraged the defendant to enter a plea of guilty in order to escape the risk of death."  (Doc. 1, § 12.)

The Supreme Court has ruled that a guilty plea which was made voluntarily, knowingly, and intelligently is constitutionally valid.  *DeSmyther v. Bouchard*, No.

---

[7]  In *Schlup*, 513 U.S. at 313-317, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to transcend procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive innocence claim.

03-1419, 2004 WL 1921182 (6th Cir. 2004) (per curiam), *cert. denied*, 544 U.S. 921

(2005) (citing *Brady*, 397 U.S. 742).  The Sixth Circuit has stated:

> [A] federal court reviewing a state court plea bargain may only set
> aside a guilty plea or plea agreement which fails to satisfy due process.
> . . . If a defendant understands the charges against him, understands
> the consequences of a guilty plea, and voluntarily chooses to plead
> guilty, without being coerced to do so, the guilty plea . . . will be upheld
> on federal review.

*DeSmyther*, 2004 WL 1921182 (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th

Cir. 1980), *cert. denied*, 454 U.S. 840 (1981)).

Robinson argues that his plea of guilty was unlawfully induced, because he

entered the plea in order to escape the risk of the death penalty.  A plea of guilty is

not invalid merely because it was entered to avoid the possibility of a death penalty.

*Brady v. United States*, 397 U.S. 742, 755 (1970); *Woodruff v. McMackin*, 889 F.2d

1089, 1989 WL 139566, at *1 (6th Cir. 1989) (TABLE, text in WESTLAW) (per

curiam); *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984).  The Supreme Court

has held that a state may encourage a guilty plea by offering a lesser sentence than

could be imposed after a trial and guilty verdict.  *Corbitt v. New Jersey*, 439 U.S.

212, 219-220 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978).

In his traverse, Robinson appears to have changed his theory, arguing that

habeas relief should be granted because, although there is a written statement

entering the guilty plea, there is no transcript establishing an oral plea colloquy,

which he contends is a federal constitutional violation under *State v. Engle*, 74 Ohio

23

St.3d 525,  660 N.E.2d 450 (1995), and *State v. Caudill*, 48 Ohio St.2d 342, 358 N.E.2d 601 (1976).  (Doc. 20, at 3-4.)

The sole ground for relief, as raised in the habeas petition, is that Robinson's plea was unlawfully induced.  (Doc. 1, § 12.)  Any alleged violations of constitutional rights which are first raised in a traverse, rather than the habeas petition, are not properly before this court, and will not be considered.  Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005), cert. denied, 547 U.S. 1074 (2006) (citing cases); Jenkins v. Welch, No. 4:09CV637, 2010 WL 1948297, at *15 (N.D. Ohio Apr. 26, 2010); Sowell v. Collins, 557 F.Supp.2d 843, 889 (S.D. Ohio 2008), aff'd, 663 F.3d 783 (6th Cir. 2011) (citing cases).

The court finds that Robinson's claim that his plea was unlawfully induced is without merit.  *Brady*, 397 U.S. at 755; *Woodruff*, 1989 WL 139566, at *1; *Caudill*, 747 F.2d at 1052.  Robinson has failed to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.


## V.  RECOMMENDATION

The petition should be denied as untimely filed.  Robinson has failed to demonstrate a credible claim of actual innocence established by new reliable evidence that was not available at the time of his indictment and plea.  *See Schlup*, 513 U.S. at 324.

Even if the court were to allow equitable tolling to excuse Robinson's untimely petition, his claim of actual innocence does not entitle him to habeas relief absent an independent constitutional violation in the criminal proceeding, and Robinson has not established a federal constitutional violation concerning his guilty plea.

Dated:  Oct. 20, 2015          /s/ Kenneth S. McHargh          
                              Kenneth S. McHargh
                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).